# RALPH E. STARKWEATHER *et al.*

## *v.*

# THE AMERICAN BIBLE SOCIETY.

1.   FOREIGN CORPORATIONS—*acquiring title to real estate.*   A corporation
created by the laws of another State, which, by the laws of such State, can
not there acquire and hold title to real estate by devise, is incapable of
acquiring title to real estate, by devise, in this State.

2.   The American Bible Society being incapable, under the laws of the
State of New York, where it was incorporated, of acquiring title to real
estate by devise, can not acquire title to real estate in this State by devise;
and real estate devised to it in this State is intestate estate, and descends
to and vests in the heirs of the testator.

3.   CHANCERY—*has no power to convert real estate into money, to enable a
corporation to realize benefits.*   Where real estate is devised to a corpora-
tion incapable of acquiring title in that way, a court of chancery has no
power to convert such real estate into money, and direct the payment
thereof to such devisee.

APPEAL from the Circuit Court of Cook county; the Hon.
W. W. FARWELL, Judge, presiding.

Messrs. Miller & Frost, for the appellants.

Messrs. Lawrence, Winston, Campbell & Lawrence, for the appellee.

Mr. Justice Walker delivered the opinion of the Court:

Appellants, as devisees and heirs at law of Charles R. Starkweather, deceased, filed their bill in the circuit court of Cook county, to establish their title to the real estate owned by testator in his lifetime, under what is known as the "Burnt Record Statute," and, amongst others, the American Bible Society was made a defendant. The society appeared, and claimed an interest in the property under the fifth clause in his will. Its right was contested, and the court below rendered a *pro forma* decree in favor of the Bible Society, to reverse which this appeal is prosecuted.

There is no question raised as to the proper execution and probate of the will, nor is it disputed that the will contained a devise of the interest claimed by appellee. The clause in the will is this: "I give and bequeath to the trustees of the American Bible Society, established in 1816, an undivided eighth of my estate. to have and to hold the same for the use of said society; provided, that said Bible Society is not to be entitled to the same, or to the income of the same, till my youngest child becomes of age."

The society was incorporated by a statute of the State of New York, passed on the 25th of March, 1841, for the purpose of publishing and promoting the general circulation of the scriptures, without note or comment. It was vested, by its charter, with the powers granted to corporations in that State by their Revised Statutes, amongst which is this power: "To hold, purchase and convey such real and personal estate as the purposes of the corporation shall require, not exceeding the amount limited in its charter." The Statute of Wills in that State, adopted in March, 1813, authorizes persons having real estate to devise the same to any person or persons, except

bodies corporate and politic, by their last will and testament. Again, in 1822, in revising the statutes. it was provided that corporations might take, purchase and hold real estate, but it was declared that no devise to a corporation should be valid unless such corporation be expressly authorized by its charter to take by devise.

Thus it will be seen that the charter of this company does not prohibit it from taking property by devise, but the Statute of Wills does expressly declare that no devise to a corporation shall be valid, unless such corporation is authorized, by its charter or by statute, to take in that manner. These provisions, thus found in different chapters of the statutes of New York, have given rise to litigation in that State to obtain a construction of these acts. The courts of last resort in New York have held, that a devise to a corporation not thus expressly authorized to so take real estate in that State was void, and that such corporations have no power to so receive and hold real estate. See *Downing* v. *Marshall*, 23 N. Y. R. 366, *McCarter* v. *Orphans' Asylum*, 7 Cow. 437. In these cases it was held. that these statutes must be regarded as being *in pari materia*, and should be construed together, and we have seen the result at which their courts arrived.

At the common law it is believed that no such devise could be made, and the 32 Hen. 8, ch. 1, and the 34 Hen. 8, ch. 5, commonly called the Statute of Wills, gave power to every person having sole estates in fee of manors, etc., "to give, dispose, will or devise to any person or persons, except to bodies politic or corporate, by his last will and testament, such lands," etc. Thus it will be seen that New York adopted this enactment in substance, and the policy of these statutes was, undoubtedly, to prevent gifts to these bodies in mortmain. It is also said, that "where the Statute of Wills excepts bodies politic as competent devisees, the usual power given to corporations by charter or act of incorporation to purchase lands, etc., has been construed not to qualify them to take by devise, the word 'purchase' being understood in its

ordinary and not in its legal and technical sense." Angell &
Ames on Corp. 111, and in support of the text they refer
to *Jackson* v. *Hammond*, 2 Caines' Cases, 337, *McCarter* v.
*Orphans' Asylum, supra, Canal Co.* v. *Railroad Co.* 4 Gill &
Johns. 1, which sustain the rule.

We, then, find a corporation created and located in New
York, incapable, by devise, of taking and holding real estate
there, claiming to hold real estate here, devised to it by a citi-
zen of this State.    Appellee contends that the Statute of Wills
in New York only operates as a disability upon all persons
in that State to become devisors of real estate to this com-
pany, and that the charter does not prevent them from receiv-
ing lands in other States, by devise. from persons beyond the
limits of the State, and hence this devise is valid and binding.
We have seen that the courts of New York have held that
such companies are not authorized to so take and hold prop-
erty in that State; and if incapable of doing so there. how. it
may be asked, can it exercise powers and discharge functions
beyond the limits of that State which it is not capable of
doing under the laws of the State which created and endowed
it with its powers and functions?    Such bodies have such
powers, only, as are conferred upon them by the laws of the
State in which they are created.

It does not matter whether this body is prohibited by its
charter or by the Statute of Wills in New York from taking
lands by devise.    Whether the one or the other statute creates
the disability, the effect is the same, as it goes to the power
of so taking and holding.    When this body was incorporated,
the Statute of Wills was in force, and the courts of New York
hold that it controled the powers of the company as though
both provisions had been contained in the same enactment.
If so, the disability is fundamental.    It operated to create a
corporation that might perform the acts and exercise the
privileges conferred, but without power to receive lands by
devise.    Such a prohibition goes to the power of the body,
as well as to persons disposed to devise lands to them.    If,

then, the corporation was created without power to so take, it is incapable of doing so, no matter where the devisor may reside or the lands are situated. The reasons operating on the legislature when they refused to endow this and other similar organizations with such capacity, grew out of considerations of sound public policy in thus preventing them from receiving and holding lands in mortmain—and this was effectually accomplished by their Statute of Wills.

We can perceive no difference whether the disability or prohibition is contained in the one or the other enactment, inasmuch as it operates on the body, as the New York courts hold, with the same effect, and produces the same results. It carries out the policy of the State as effectually in the one mode as in the other, and goes to the power to thus take real estate, and operates as a prohibition and a want of power; and the power not existing in the body to so take, all such devises to it must be held ineffectual to pass title, without reference to where the devisor may reside or the lands may be situated.

We are aware that other courts, of the highest respectability, have held that the laws of New York can not prevent this corporation from taking land out of that State, by devise, so that the devisor does not reside there; but we are unable to concur with them in so holding, as we think the inhibition is fundamental, and goes to the power to thus receive real estate.

It may be said, that, the lands not being in New York, it can, in nowise, affect the policy of that State for the company to hold lands in another State. Such bodies can only exercise their privileges and functions in other States by permission, expressed or implied. When by implication, it is denominated comity between States. For such bodies to hold property or transact business in a State different from that of their creation, they must have such permission. This being so, New York has no power to create a body incapable of taking lands by devise in that State, and yet with power to do so in

a foreign jurisdiction. If their legislature was to so enact, and other States were to consent, then such bodies might, no doubt, so receive and hold lands; but that legislature has not so enacted in this case, nor has our State so consented.

The will in this case was probated on the 16th day of September, 1867, and we are aware of no statute of our legislature, then in force, which authorized foreign corporations to hold lands, by devise, in this State.

In the case of *Carroll* v. *East St. Louis,* 67 Ill. 568, this court held, that a foreign corporation could not hold lands in this State, beyond what was reasonably necessary for the transaction of the business for which they were created; that a corporation created in another State, for the purpose of buying and selling lands, could not come to this State and pursue the business for which the corporation was created; that conveyances to it of lands in this State were void, and failed to pass title to the corporation. The inability was placed on the ground that it was opposed to the policy of this State, deduced from the course of its general legislation.

The principles there announced apply, with full force, to this case, as all of the inconveniences and injuries are as likely to ensue in this, and other cases like it, as in that. We, however, deem it unnecessary to repeat the reasons which led us to the conclusions announced in that case; but we must hold, that case is conclusive of this. Then, whether this corporation is incapable of taking this land under the laws of New York or under the laws of this State, does not matter, as the result is the same. We, however, think the company is incapable of taking under either, nor does the purpose for which the corporation was created change the principle. It does not matter how commendable and beneficent the purpose of the organization may be, or what amount of benefit it is calculated to accomplish, the rules of law must have their proper application, leaving it to the General Assembly, if necessary, to make a change.

It is, however, urged, that even if this devise is void, the court may, and, nevertheless, should, carry out the intention of the devisor, by decreeing the sale of this real estate, and ordering the payment of the proceeds to appellee — that this is not only sanctioned but required by the former adjudications of this court.

In the case of *Heuser* v. *Harris,* 42 Ill. 425, a party had made a will, and had provided that his estate should be reduced to money, and then to be divided: one-half to the school district in which his farm was situated, and the fund to be managed by a trustee, to be elected by the people of the district, for four years, to give security, and to perform the duties without compensation; the other half to the support of the poor of the county, but only the interest to be used. As in the one case it was impracticable to find a person who would take charge of the fund, and manage it for the use of schools of the district, and as to the other fund there were no trustees named, or any mode pointed out by which trustees might be obtained, the court held. that as these objects were within the language of the 43 Eliz. chap. 4, which was held to be in force in this State, there was power to execute the trust *cy pres,* and trustees were designated to carry out the provisions of the will. It was there said, in reference to the portion set apart for school purposes, the bequest was made to a corporation capable of taking it, and the mere instrument to control its application could be readily provided by a resort to a court of equity; and as to the fund bequeathed to the poor, the county court was the proper donee of the fund, and could take and control it, as the trustee of the poor, in the mode prescribed by the will.

It will be observed, that in that case there were donees capable of taking as trustees; but in this case, we have seen, the donee was incapable of taking and holding the property, for the want of legal ability. Again, in that case. there was no change of the fund, nor was it converted from one kind of property into another, but all that was done was to simply

declare that the bequest should not be lost for the want of a trustee, and that one might be appointed *cy pres,* to carry out the intention of the donor; but here we are asked to do more: to convert this real estate into money, and pay it to appellee.

A reference to the 43 Eliz. chap. 4, will show that all of the subjects intended to be embraced in that statute are embraced in the preamble; but corporations of the character of the Bible Society are not enumerated. It embraces "schools of learning, free schools, and scholarships in universities;" also, "aged, impotent and poor people." Hence, the fact that the 43 Eliz. may be in force in this State, does not, by any means, confer the power claimed in this case, and it is believed that the doctrine of executing trusts *cy pres* had its origin in that enactment.

In the case of *The Trustees of the Philadelphia Baptist Association* v. *Harts' Exrs.* 4 Wheat. 1, Chief Justice MARSHALL, in delivering the opinion, has very fully examined into the grounds of chancery jurisdiction in this country, and it is there held, that whatever may have been the power of the king, as *parens patriæ,* in England, or even of the courts of chancery, when acting under the authority of the royal prerogative and not in the exercise of their ordinary jurisdiction, in this country the validity of devises and bequests must be determined by well-defined legal rules and principles, and not by an arbitrary discretion or by unlimited power by the court, under the royal prerogative. He, in the opinion, says: "It is, perhaps, decisive of the question propounded to this court, to say that the plaintiffs can not take" the property.

In the case of *Fountaine* v. *Ravenel,* 17 Howard, 369, which involved a bequest of property to be appropriated by the executors of the testator to such charitable institutions in South Carolina and Pennsylvania as they might select and deem most beneficial to mankind, the executors died without naming the institutions, and before the time therefor had expired. It was held to be inoperative, and not capable of being enforced in the circuit court of the United States. In that case

it was held, that such charities were only executed in the English court of chancery, by virtue of power derived from the royal prerogative, and which was not inherent in the court as a court of equity under its ordinary jurisdiction. Chief Justice TANEY. in delivering the opinion of the court, lays down the doctrine, that the same rules that govern an ordinary trust, and determine its validity, apply to and determine the validity of a charitable trust, and that if the *cestui que trust* or beneficiary is incapable of maintaining a suit in equity to establish his claim in an ordinary case of trust, the same rule must be applied where charity is the object, and complainant claims to be recognized as one of its beneficiaries. The same doctrine is announced in the case of *Wheeler* v. *Smith*, 9 Howard, 55. Also, in the case of *Vidal* v. *Girard's Exrs.* 2 Howard, 195, where the authorities are extensively reviewed.

In the case of *Williams* v. *Williams*, 4 Denio, 542, the court says, that "the English doctrine is in force here only so far as it is adapted to our political condition. In that class of cases, therefore, where the gift is so indefinite that it can not be executed by the court, and where the purpose is illegal or impossible, the claims of the representatives of the donor must prevail over the charity. The reason is, that we have no magistrate clothed with the prerogatives of the crown, and our courts of justice are intrusted only with judicial authority." This we regard as the true doctrine, and the execution of trusts *cy pres* should be limited to the rule there announced, and to cases embraced in the 43 Elizabeth.

Where the trust is legal, and is definite as to the person to whom the gift is made and the thing given, and only requires a trustee to carry out the purpose of the donor, then a court of equity may well act in preserving the trust fund from lapsing. The case of *Williams* v. *Williams, supra,* was followed in New York by the cases of *Beekman* v. *Bonsor,* 23 N. Y. R. 308, and *Bascom* v. *Albertson,* 34 N. Y. R. 610, and they announce and apply the same rule.

We, however, are asked to go further in this case. We

are urged to direct the sale of this real estate, and pay appellee the proceeds.   Why should we do so in favor of a charity of this character, when such relief is denied a natural person? If a man were to devise lands to a child, and it proved that he had no title to the property devised, could it be claimed that the court would carry out the intention of the devisor, by decreeing to the devisee other property of equal value? We suppose no one would contend, that simply because the devisor's intention had been unexpectedly defeated, the court would therefore make a new will for the devisor, and give the devisee an equivalent of what was intended.

The testator, no doubt, intended to give this land to appellee, but the means employed failed to accomplish his purpose; but that does not clothe the court with power to give money or other property.   The courts are so strict, that they will not permit the terms of a will to be altered, even when the devisor has, by mistake, misdescribed land in a devise, by substituting that which could be clearly proved to have been intended.   *Kurtz* v. *Hibner,* 55 Ill. 514.   Then why change the fund from land to money, when the testator intended to give land and not money?   Why substitute something not donated, because something was intended to be donated but did not vest in the donee?

When the testator died, all of the real estate of which he died seized, and which was intestate, at once descended to and vested in his heirs; and as appellee was incapable of taking title to the real estate attempted to be devised, that became thereby intestate property, and descended to and the title vested in his heirs, as would any other intestate real estate. This being the case, we have no more power to order their property to be sold to satisfy this void devise, than that of any other person.   Had there been beneficiaries capable of taking directly by devise, and had this case fallen within the Statute of Charitable Uses, but the devise had failed simply for the want of a trustee, then the beneficiary would probably have taken an equitable title to the property devised.   But

here the beneficiaries are the whole world, to whom the bibles are to be distributed, and they are incapable of taking, and the corporation is incapacitated from taking, and, hence, neither a legal nor equitable title has vested in either, but it has descended to the heirs of the testator. So that, in any view we have been able to take of the case, we fail to see any well founded right that appellee has to the property, or the proceeds of its sale.

The decree of the court below must be reversed, and the cause remanded for further proceedings in conformity with this opinion.

*Decree reversed.*

Mr. Justice Sheldon dissents.