(No. 16711.—Decree affirmed.)
GRACE WELLER PARKER, Appellee, *vs.* GRACE PARKER RULEY, Appellant.

*Opinion filed June 18, 1925.*

1. WILLS—*when party seeking to establish trust in devisee must prove devise was made in consideration of agreement.* In a suit by a devisee to quiet title, a cross-complainant who claims the devisee only holds the legal title in trust under an agreement with the testator to convey or devise the fee to cross-complainant at the devisee's death must prove that the devise was made by the testator in consideration of the devisee's alleged agreement, whether the right to the relief claimed is regarded as based upon contract or upon fraud.

2. SAME—*written or oral statements of testator not admissible to alter devise.* Written or oral statements of the testator, made either before or after the execution of the will, can have no effect upon any unambiguous devise or provision of the will, and they are competent only for the purpose of showing the mental condition of the testator, where that question is in issue.

3. TRUSTS—*an implied or resulting trust must be established by clear and convincing proof.* To establish an equitable title against the holder of the legal title, who is in possession, where the proof of the equitable rights rests wholly in parol, requires evidence which is clear and convincing, and where the evidence is doubtful or capable of reasonable explanation upon theories other than that of the existence of an implied or resulting trust such trust will not be held to be sufficiently established.

APPEAL from the Circuit Court of Iroquois county; the Hon. FRANK E. HOOPER, Judge, presiding.

CHARLES W. LAMBORN, and MORRIS & SOUTH, for appellant.

McCulloch & McCulloch, and J. W. Kern, (Arthur Abraham, of counsel,) for appellee.

Mr. Chief Justice Dunn delivered the opinion of the court:

This is an appeal by Grace Parker Ruley from a decree of the circuit court of Iroquois county quieting the title to certain real estate in the appellee, Grace Weller Parker, and dismissing for want of equity the appellant's cross-bill praying that the appellee be decreed to hold the title in trust for the appellant and her children, subject only to a life estate in the appellee.

Robert W. Parker died on March 20, 1922, having no children or descendant but leaving the appellee, his widow. His other heirs were his mother, Mary L. Parker, his sister, the appellant, and his brother, Ralph D. Parker. He left a will dated September 16, 1919, by which he gave all his property to his wife if she survived him, but if she did not, then to his sister, Grace Parker Ruley. The will was admitted to probate in the probate court of Cook county. The testator owned at the time of his death the northeast quarter of section 27, town 27, north, range 14, west of the second principal meridian, in Iroquois county. On March 8, 1923, his widow filed a bill in the circuit court of Iroquois county alleging that since the death of the testator the appellant, on her own behalf and on behalf of her two minor children, has made an unjust and unfounded claim to the entire right and title to the real and personal estate acquired by appellee under her husband's will, subject only to a life estate of the appellee, claiming that the appellee holds the legal title to the real estate in trust for the appellant or her children and that the appellee legally contracted with her husband to execute a will by which such real and personal property should at her death go to the appellant, or to her children in case of her death, and that the appellee is legally bound to carry out the terms of such agreement and exe-

cute a will devising and bequeathing such real and personal property, as it is alleged said pretended contract provides. The bill denies that the appellee ever made any such contract or any contract with respect to a will; alleges that by reason of the unfounded claims of the appellant the title of the appellee is clouded and insecure, and prays that the appellee be decreed to be the sole owner, in fee simple, of the real estate in question. Grace Parker Ruley, her husband, her two minor sons, the heirs of Robert W. Parker and the tenant of the real estate were made defendants. Grace Parker Ruley answered and filed a cross-bill, alleging that the testator acquired the real estate by inheritance from his father; that he had no children and desired that his wife should have a life estate, only, in his property and that upon her death it should go back to his own family, to the appellant, and in the event of her prior death, to her children; that he executed a will making such disposition of his property but the appellee induced him to revoke it and execute the will which was admitted to probate, promising if he did make a will giving her his entire estate that she would execute her will giving to the appellant, or in the event of her death, to her children, all the property acquired by the appellee under her husband's will; that at the time of executing the new will the testator made the following statement in writing as evidence of the agreement of his wife, which he signed and attached to his will:

"CHICAGO, *September 16, 1919.*

"It is understood between my wife and myself that on my decease she shall execute a will, (if she has not already done so) by which any and all property of mine going to her, shall, at her decease go to my sister (or her children in the case of her death). My wife having full control and enjoyment and ownership of my said property during her (my wife's) lifetime with all income and profits therefrom.                    ROBERT W. PARKER."

—that after his death the appellee acknowledged that the agreement had been made, and executed her will giving to the appellant, or to her children in the event of her prior

death, all the estate which had been devised and bequeathed to her by the will of her husband, but that soon after she revoked such will and made another giving the estate to others than the appellant and her children. The appellee answered, denying the alleged agreement with her husband and other allegations of the cross-bill and claiming the benefit of the Statute of Frauds. The cause was heard by the chancellor in open court.

Whether the right to the relief claimed is regarded as based upon contract or fraud, it is essential that the complainant in the cross-bill prove that the devise to the appellee by her husband was made in consideration of her agreement to make a will devising the property to the appellant, or in case of her death, to her children. The appellant produced as a witness William A. Taylor, a lawyer and a friend of the testator, who testified that several weeks before September 16, 1919, the testator showed him a draft of a will which he contemplated making, giving a life estate in his property to his wife with remainder to his sister, and in case of her death prior to his wife then to his sister's children. Taylor and Parker talked over the execution of the will, some changes were discussed, and Parker went away, taking the draft with him. He returned later with an executed will in effect the same as the draft but somewhat changed in phraseology. Parker then told Taylor he had inherited his property from his father and he felt that it should go back to his father's family when his wife was through with it; that he wanted her to have the use of it while she lived but did not want it to go to her folks. Some weeks later Parker told Taylor that he was going to change his will; that his wife was not satisfied to have the property left as he had left it, and she had agreed that if he would change the will leaving the property to her she would make her will leaving the property to his sister, and in the event of the sister's death, to the sister's children. Taylor told him that was a very loose way of leaving things, and

Parker said he would leave a writing or a paper showing there was an agreement of that kind. Taylor told him that it would be better to put it in the will itself and there would be no question, but Parker said his wife had agreed to do it and she would keep her word. Parker afterward brought in the will of September 16, 1919, which was already executed, and brought with him the written memorandum mentioned in the cross-bill, in his own handwriting and bearing his signature, which he pinned to the will in Taylor's office. Taylor was named as executor of the will. Two days before Parker's death, when he was dangerously ill and unconscious, Taylor called at his house, and testified that he had a long conversation with the appellee, in which she told him that she wanted him to draw her will; that she had agreed with her husband to make a will, and she wanted him to draw a will leaving the property to the appellant and her children. The night after Parker's death Taylor again went to his house and had another conversation with the appellee, in which she again stated that she had agreed to make her will leaving the property to her husband's sister, and in case of her death, to her children, and she wanted Taylor to draw the will that night. He told her it was not necessary to take it up then,—to wait until after the funeral and he would attend to it for her. She said she had agreed if Robert would change his will leaving everything to her that she would make this will leaving the property to his sister. Taylor testified that after Parker's death he and the appellee, her step-father and the appellant met in the safety deposit vault of the Illinois Trust Safety Deposit Company in the presence of the manager and a representative of the inheritance tax office. The testator's box was taken into the conference room adjacent to the vault and opened, the will was taken out, and it had pinned to it the paper signed by the testator. Taylor called the attention of those present to the will and the paper attached and read both and passed them over to the others to look at and read. Taylor and

the appellant testified that the appellee stated that she knew about this paper and that she had the same kind of a paper in her box. A few minutes after, the appellant asked the appellee if she would make the will as soon as possible, and the appellee replied that she would. F. W. Nourse, the manager of the safety deposit company, testified that he did not recall as to whether Mrs. Parker stated that she knew there was a paper in the box referring to an agreement or understanding between herself and her husband. She did not say that she had the same kind of a paper in her box, too, or say, before the box was opened, that there was a paper in it relative to an agreement. She did not say that she knew about the paper. C. H. Weller, the appellee's step-father, testified that the appellee did not say that she had the same kind of a paper in her box; that she did not say anything of the kind or that she knew about the paper; that she did not say that she had agreed to make a will and would do it. The appellee testified that she did not, either before or after the opening of the box, say that she knew about the paper being in the box, and did not say that she had agreed to make a will and would do it, or say that there was a paper of a similar nature in her box which gave the property coming to her from her father and mother back to her family. Taylor testified that he saw the appellee a few days later at his office and that she said she was going to make her will and wanted him to draw it; that he dictated a draft of the will while she was there, in her presence, leaving the property she had obtained from her husband to his sister, the appellant, and in the event of the sister's death during the appellee's lifetime, then to the sister's children. This was written up afterwards and mailed to the appellee. Two or three days later the appellee called on Taylor, bringing with her the draft of the will he had mailed her, to which she objected. After the provision giving the property which she had received from her husband to the appellant, or in case of her death, to her sons, the draft

contained this statement: "This devise and bequest is made in accordance with an agreement made between myself and my said husband in his lifetime pursuant to which agreement he devised all his property to me." The appellee said she did not want it that way,—she did not want the word "agreement" there. She said it was an understanding. Accordingly another draft of the will was prepared in which the word "agreement" was changed to "understanding," and the words "pursuant to which agreement he devised all his property to me" were omitted, and the will with these changes was executed on April 10, 1922.

The appellee, her step-father, the appellant, Taylor and the manager of the safety deposit company were all examined as to what occurred in the vault when the safety deposit box was opened and the will was taken out and read. Taylor testified to various statements which he says were made then and at other times by the appellee, all of which she denies. Each of them is corroborated in respect to his or her statement by one or more of the other witnesses who were present. All of Taylor's testimony, as well as the statement signed by Parker and attached to his will, was objected to by the appellee, and the court did not pass on the objection but heard the testimony subject to the objection. The decree finds that there is no evidence that it was the desire of Parker that any of his estate should go to the cross-complainant or her children, and that there is no evidence that it was his purpose or intention to devise and bequeath to his wife a life estate, only, in and to his property and to devise and bequeath the remainder to the cross-complainant or to her children; that the complainant did not induce or persuade Parker to revoke any will, nor did she have any part in inducing him to make his last will, nor did she make any promise to or agreement with him in relation to his will or the distribution of any of his property.

Neither the written statement of the testator attached to his will nor the statements testified to by Taylor in the

various conversations with him were competent evidence for any purpose in this case. The language of the will was unambiguous. The written statement did not purport to be any part of it or to affect it in any way, and statements of the testator, written or oral, made either before or after the execution of the will, can have no effect upon such provisions. They are competent only for the purpose of showing the mental condition of the testator. (*Waters* v. *Waters,* 222 Ill. 26; *Crumbaugh* v. *Owen,* 238 id. 497; *Gregory* v. *Richey,* 307 id. 219.) Here the mental condition of the testator is not in issue. Counsel for the appellant do not claim that these statements are competent to show an agreement on the part of the appellee, but they contend that the testator's statements, made, as they say, contemporaneously with the series of acts running over a period of some weeks, are competent evidence characterizing and explaining his acts in making the wills of contradictory provisions and explaining his purpose, intention and state of mind both with respect to the disposition of his property and the confidence he reposed in his wife; that they were a part of the *res gestæ,* material and competent, because the question of Parker's purpose and intention and his confidence in his wife are in issue in this case. There is no such issue in the case. There is no question of the validity of the will and no ambiguity as to its meaning. There is no act of the testator requiring explanation; no question of the testator's purpose and intention or of his confidence in his wife. The foundation of the appellant's case is the proposition that the appellee made a contract with her husband that if he would devise all his property to her she would make a will devising it to his sister, or in case of her death, to the sister's children, and on this issue the testator's statements in her absence are mere hearsay. The statements of the appellee testified to by Taylor and the appellant tending to show that she had agreed to make the will in favor of the appellant are all specifically denied by the appellee. To establish an

equitable title against the holder of the legal title who is in the possession of lands, where the proof of the equitable rights rests wholly in parol, requires evidence which is strong, clear and convincing. Where the evidence is doubtful or capable of reasonable explanation upon theories other than that of the existence of an implied or resulting trust, such trust will not be held to be sufficiently established to entitle the beneficiary to a decree declaring and enforcing the trust. (*Streeter* v. *Gamble*, 298 Ill. 332; *Winkelman* v. *Winkelman*, 307 id. 249; *Baughman* v. *Baughman*, 283 id. 55; *Goelz* v. *Goelz*, 157 id. 33; *McGinnis* v. *Jacobs*, 147 id. 24.) The execution of the will by the appellee does not show the existence of the contract alleged in the cross-bill. It could not reasonably be said to have any tendency to do so except for the single sentence, "This devise and bequest is made in accordance with an understanding between myself and my said husband during his lifetime." This is not equivalent to the statement which was contained in the draft of the will which the appellee refused to sign, that the will was made "in accordance with an agreement pursuant to which agreement he devised all his property to me." The appellee refused to sign the first draft of the will containing that statement and insisted that there was no agreement but only an understanding. The appellee testified that this clause in the first draft of the will was not dictated in her presence; that Taylor never mentioned such a clause and she never did. Nothing was said about her having any agreement or understanding with her husband that she would devise or bequeath property to his sister or her children; that she never talked to any lawyer except Taylor about the will before it was finally signed; that she went back to Taylor's office and told him that she objected to that clause in the will; that she never had any such agreement with her husband and never knew of any such agreement; that she told him she could not sign the will; that she had never made such an agreement and he

317—29

should leave the clause out, but he said, "No, we will change it; we will put the word 'understanding' in it, and I want the clause in just the same as that on the memorandum slip that was found with your husband's will for sentimental reasons." She protested that she had no such understanding with her husband, but he told her "that clause means nothing at all; any time you want to you can change your will." She had never made a will before and had never had anything to do with making a will.

Conceding that the will was made as it recites, in accordance with an understanding between the appellee and her husband in his lifetime, there is no evidence other than the testimony of Taylor, which she contradicts, that she ever knew of her husband's previous will or what the understanding with her husband in his lifetime was. It is not to be implied that her husband having devised the appellee his property in fee simple they had an understanding that she should only have a life estate. Such an agreement would be entirely inconsistent with his will, and there is not the slightest evidence that there was any such agreement. The appellee's act in making her will at the time she did and under the advice she had, and with the information which she says she had that she could change the will at any time she chose, is not inconsistent with an understanding with her husband in accordance with which it was made, which did not bind her absolutely and in all events to hold the estate restricted to a bare use for her own life with a vested and unqualified remainder to her husband's sister or her children. The chancellor saw the witnesses and heard them testify. His means of determining which witnesses were more worthy of credit were superior to ours, and his conclusion cannot be disregarded unless manifestly against the weight of the evidence. In our judgment it is in accordance with the evidence, and the decree will be affirmed.

*Decree affirmed.*