Mercantile Trust & Savings Bank et al., Plaintiffs, v. Dorothy A. Rogers et al., Defendants.

Mercantile Trust & Savings Bank, and Andrew C. Schnack, as Executors of Last Will and Testament of Ella A. Rogers, Deceased, Plaintiffs-Appellees, and Lucy R. Ellis et al., Defendants-Appellees, v. Dorothy A. Rogers and Dr. James Rogers Wellman, Defendants-Appellants.

Gen. No. 9,972.

Third District.

February 18, 1955.

Released for publication March 7, 1955.

Inghram & Dittmeyer, of Quincy, for defendants-appellants.

Schmiedeskamp & Jenkins, of Quincy, for plaintiffs-appellees; Lancaster & Nichols, of Quincy, and Richard S. Bull, of St. Louis, Missouri, for defendants-appellees.

MR. JUSTICE REYNOLDS delivered the opinion of the court.

Ella A. Rogers died on February 22, 1952, leaving a will which was duly admitted to probate in the county court of Adams county. The will, after providing for a number of specific bequests directed that the real estate be sold for cash and the remainder of the estate, including the proceeds of the sale of the real estate, be held in trust by the executors who were also designated as trustees. The trust set up was for the payment of the income from the estate to her sister Isabel Rogers Wellman, during her natural life and at her death to be distributed among the heirs. The will named the Mer-

cantile Trust and Savings Bank and one Andrew C. Schnack, as executors of the will. On the 26th day of January 1953, the executors filed their complaint to construe the will, with reference to the last sentence of paragraph 7, which read as follows:

"All the net income from such Trust Estate shall be paid semi-annually as received to my sister, Isabel Rogers Wellman, during her natural life, and upon her death, all principal and undistributed income, in the hands of the legal representatives of my estate and said Trustees, shall be paid to and distributed among my nieces and nephews then living and the living children of any of my nephews and nieces who may at the time of the making of such distribution be dead, per stirpes and not per capita."

To this complaint to construe the will, two of the heirs, Dorothy A. Rogers and Dr. James Rogers Wellman, filed their answer, in which they admit all the allegations in the complaint, and say that it was the intention of the testatrix that the residuary estate should be distributed per stirpes and not per capita, and that said Dorothy A. Rogers and Dr. James Rogers Wellman, were each entitled to a one-third part, and that the children of John B. Rogers, a deceased brother of the testatrix were each entitled to a one-eighteenth share. Dorothy A. Rogers was a niece of the testatrix, being a child of Thaddeus Rogers, a deceased brother, and Dr. James Rogers Wellman was a son of Isabel R. Wellman, a sister of the deceased.

Later, the heirs of John B. Rogers, filed their motion to strike paragraph 8 of the complaint, which alleged that the person who drafted the will of Ella A. Rogers, one Richard W. S. Neu, deceased, had left certain notes and memoranda showing that it was the intention of the testatrix that her residuary estate be divided, one-third to Dorothy A. Rogers, one-third to Dr. James Rogers Wellman, and one-third to the children of John

165

B. Rogers, a deceased brother. On the 13th day of June 1953, the trial court sustained the motion to strike said paragraph 8 and the same was ordered stricken. Then on the 3rd day of July 1953, the children of John B. Rogers, the deceased brother, filed their answer in which they contended that the true intent of the testatrix was, that upon the death of the sister, Isabel Rogers Wellman, the undistributed estate and income of the estate should be paid to and distributed equally among her nieces and nephews living at the time of the death of Isabel Rogers Wellman.

On the 14th day of December 1953, the trial court entered a decree finding that Ella A. Rogers left surviving her at the time of her death, her sister, Isabel R. Wellman, her niece, Dorothy A. Rogers, the child of Thaddeus Rogers, a deceased brother of the testatrix, who predeceased her, Lucy R. Ellis, Mary Elizabeth Rogers, Jane Rogers, Richard D. Rogers, John B. Rogers, Jr., and Anne Rogers Bull, the children of John B. Rogers, a deceased brother of the testatrix who predeceased her, and Dr. James Rogers Wellman, a nephew, the only son of Isabel R. Wellman, the sister, and that Isabel R. Wellman died March 26, 1952. The court found that the true intent, meaning and direction of said Ella R. Rogers as expressed in said paragraph 7 of the will, was that upon the death of Isabel R. Wellman, all principal and undistributed income of the estate be paid and distributed equally to said Dorothy A. Rogers, Dr. James R. Wellman, Lucy R. Ellis, Mary Elizabeth Rogers, Jane Rogers, Richard D. Rogers, John B. Rogers, Jr., and Anne Rogers Bull, each being entitled to a one-eighth part thereof. From that judgment and decree, Dorothy A. Rogers and Dr. James Rogers Wellman have appealed, as to those parts of the decree wherein the court found that the true intent, meaning and direction of the said Ella A. Rogers, deceased, in and by the provisions of paragraph 7, was that the

undistributed estate, be paid to and distributed equally among the eight nieces and nephews of the testatrix. The cause now comes to this court on that appeal.

█ The executors, plaintiffs-appellees, have filed their brief. The defendants-appellants filed their motion to strike the brief of the plaintiffs-appellees. That motion is hereby denied, for the reason that the plaintiffs-appellees were made parties involuntarily by this appeal. They stand in the place of the testatrix to administer the estate as the testatrix intended that it be administered. They could have failed to file and abided by the action of this court, but on the other hand they were entitled to file their brief and present their interpretation of the intention of the testatrix.

The only point that needs to be adjudicated on this appeal is a construction of the language of the testatrix in paragraph 7 of the will, where the testatrix provided that upon the death of her sister, Isabel Rogers Wellman, all principal and undistributed income in the hands of the legal representatives of her estate and said trustees, should be paid to and distributed among her nieces and nephews then living and the living children of any of her nephews and nieces who might at the time of the making of such distribution be dead, per stirpes and not per capita. It is without dispute that Dorothy A. Rogers, Dr. James R. Wellman, Lucy R. Ellis, Mary Elizabeth Rogers, Jane Rogers, Richard D. Rogers, John B. Rogers, Jr., and Anne Rogers Bull, were all nieces or nephews of the deceased testatrix, and all of equal relationship to the testatrix. Dorothy A. Rogers was the only living child of a deceased brother, Thaddeus Rogers. Dr. James R. Wellman was the only living child of Isabel R. Wellman, a sister who died shortly after the death of the testatrix. The others, Lucy R. Ellis, Mary E. Rogers, Jane Rogers, Richard D. Rogers, John B. Rogers, Jr., and Anne Rogers Bull, were the children of John B. Rogers, a deceased brother

167

of the testatrix. The niece, Dorothy A. Rogers, and the nephew, Dr. James R. Wellman, being only children, contend that they were each entitled to a one-third share of the estate and that the six children of John B. Rogers, deceased, were each entitled to one-eighteenth share each. The children of John B. Rogers claim that each of them is entitled to a one-eighth share. In order to properly interpret the intention of the testatrix, it will be well to set out the exact words of the clause in question, with the punctuation or lack of punctuation shown. That language was as follows:

"All the net income from such Trust Estate shall be paid semi-annually as received to my sister, Isabel Rogers Wellman, during her natural life, and upon her death, all principal and undistributed income, in the hands of the legal representatives of my estate and said Trustees, shall be paid to and distributed among my nieces and nephews then living and the living children of any of my nephews and nieces who may at the time of the making of such distribution be dead, per stirpes and not per capita."

The question that must be decided is whether or not the words "per stirpes and not per capita" applied to the whole clause, or only to the living children of any of the nephews or nieces who were dead, at the time of the making of the distribution. If it applies to the whole clause, the per stirpes clause would make the one niece Dorothy A. Rogers, the daughter of a deceased brother entitled to one-third share, the one nephew Dr. James R. Wellman, the son of a deceased sister, entitled to one-third share and the other six nieces and nephews, children of a deceased brother, each entitled to one-eighteenth share. On the other hand, if it is applied to only the children of nieces or nephews who were deceased at the time the distribution was made, there being none, the clause has no application here, and the distribution should be made per capita.

168

The distinction between inheritance "per stirpes" and inheritance "per capita" has been decided and enunciated so many times there can be very little question as to the meaning. "Per stirpes" means by representation. A devise to the heirs of testator's children "per stirpes" meant that heirs of the children should take by right of representation through their respective parents and not as individuals. Lide v. Mears, 231 S. C. 111, 56 S.E.2d 404. Ordinarily the words "per stirpes" are used to denote substitution in case of the death of the primary legatee. Fidelity Union Trust Co. v. Farley, 127 N. J. Eq. 346, 13 A.2d 313. The words "per stirpes" denote a taking by right of representation of that which an ancestor of the parties would take, if living. Wood v. Brown, 71 Cal.App.2d 544, 162 P.2d 859. As used in the Probate Act providing that adopted child shall not take property from kindred of adopting parent "per stirpes," and in former Adoption Act containing similar provision as to taking by right or "representation," the quoted terms are synonymous. In re Estate of Tilliski, 390 Ill. 273. Applying the law of inheritance "per stirpes" to this case, if the testatrix meant that distribution to the nephews and nieces be "per stirpes," then it necessarily would mean by reason of their fathers or mothers, and there being two brothers and one sister, the children would only take what their father or mother would have received. Against that, "per capita" means per individual, or per person, and if the estate should be divided per capita among the nieces and nephews, then the division decreed by the trial court was correct. One of the most famous cases ever to decide this point used this language: "As stated by Judge Cardozo in Matter of Farmers' Loan & Trust Co., 213 N. Y. 168, 173, 107 N. E. 340, 342, 2 A. L. R. 910: 'If it was per capita, children and grand-children take concurrently. If it was per stirpes, they take by representation.'" In re Macy's Will, 68 N.Y.S.2d 833, 835.

■ ■ In arriving at a determination of the intention of the testator, the language of the will should control if the intention can be ascertained. In this case, an attempt was made to prove the intention by the notes and data of the scrivener who drew the will. The scrivener was deceased. The court properly refused to permit this testimony. In the case of Harris v. Harris, 223 Ill. App. 406, the court said: "In this case, . . . a witness called by the appellee, testified, over objection of appellant, that he was acquainted with the affairs of Mary M. Harris, and with the property of her estate; that he helped her draw the will and codicil and knew what she wanted done. He testified that her intention was, that Daniel O. Harris should have no share in the residuary estate, clause ten; that he received the land mentioned in clause thirteen of the will. He testified that he could tell that such was her intention by what she said prior to the making of the will.

"This testimony was clearly incompetent and cannot be considered in construing the will and codicil."

■ The question of punctuation or lack of punctuation is raised. It has been held that the punctuation of a will will not control its meaning. Kuehle v. Zimmer, 249 Ill. 544; Johnston v. Gastman, 291 Ill. 516; Kern v. Kern, 293 Ill. 238. In construing a will the punctuation and paragraphing may be disregarded and altered if the change renders the meaning more obvious and unquestionable. Tolman v. Reeve, 393 Ill. 272. The primary object is to give effect to the testator's intentions.

■ The law in Illinois is well settled that extrinsic evidence is not admissible for the purpose of varying the intent of the testator, as expressed in the will itself. Stevenson v. Stevenson, 285 Ill. 486; Fuller v. Fuller, 315 Ill. 214; Bimslàger v. Bimslager, 323 Ill. 303; Gahan v. Golden, 330 Ill. 624. Where there is a latent ambiguity in the will, extrinsic explanatory evidence is admissible to remove ambiguity, but not to

alter or detract from the terms of the will. Appleton v. Rea, 389 Ill. 222. A latent ambiguity has been defined as one where language employed is clear and intelligible, and suggests but a single meaning, but some extrinsic fact or extraneous evidence creates a necessity for interpretation or a choice between two or more possible meanings. Krog v. Hafka, 413 Ill. 290. A latent ambiguity in a will does not arise from words themselves, but from extrinsic circumstances to which words refer and which may be explained by development or extraneous facts without altering or adding to written language. Appleton v. Rea, 389 Ill. 222. In the case of Appleton v. Rea, heretofore cited, the court there said: "The cardinal rule of construction is to ascertain the intent of the testator. This intent must be gathered and ascertained from a consideration of the entire will. (McKibben v. Pioneer Trust & Savings Bank, 365 Ill. 369; Riddle v. Killian, 366 Ill. 294; Papa v. Papa, 377 Ill. 316; Cahill v. Michael, 381 Ill. 395.) The intention must be obtained from the words of the will itself, the purpose being to arrive at the intention as expressed by its language, and not an intention which may have existed in the testator's mind apart from such language. (Bingel v. Volz, 142 Ill. 214; Norton v. Jordan, 360 Ill. 419; Dahmer v. Wensler, 350 Ill. 23; Cahill v. Michael, 381 Ill. 395.) Parol evidence may be admitted where its effect is merely to explain or make certain what the testator has written, but the rule is inflexible that such proof is not admissible for the purpose of importing into the will an intention which is not there expressed. (Dahmer v. Wensler, 350 Ill. 23; Norton v. Jordan, 360 Ill. 419.) Evidence respecting the intention of a testator, separate and apart from that conveyed by the language of the will, is not admissible for the purpose of interpreting it (Starkweather v. American Bible Society, 72 Ill. 50; Dahmer v. Wensler, 350 Ill. 23); and declarations of a testator as to what he intended are

171

not admissible. (Kirkland v. Conway, 116 Ill. 438; Parker v. Ruley, 317 Ill. 441.) Nor are instructions given to the scrivener of the will admissible to determine intention. Hollenbeck v. Smith, 231 Ill. 484; Dollander v. Dhaemers, 297 Ill. 274."

In Graves v. Rose, 246 Ill. 76, at page 79 the court there said: "Our statute requires all last wills and testaments to be in writing and properly witnessed, and extrinsic evidence is never admissible to alter, detract from or add to the terms of a will. While the object of construction is to ascertain the intention of the testator, it must be an intention expressed in the will and it must be determined from the language used. A will cannot be reformed to conform to any intention of the testator not expressed in it, no matter how clearly a different intention may be proved by evidence of extrinsic facts. If that were not so, all wills would be subject to proof of mistake and of a different intention from that expressed, so that, in fact, property would pass without a will in writing which the law declares shall not pass except by a written will."

The case of Krog v. Hafka, 413 Ill. 290, is authority for admission of extrinsic evidence to disclose the intention of the testatrix, but in that case there was an ambiguity in that the named beneficiary had died and a controversy arose as to the intention of the testatrix as to whether or not it was a class devise or a particular devise. If the named beneficiary had not died, there could not have arisen any question and the admission of testimony would have been error. We cannot see that the Krog v. Hafka case changed the basic rule in Illinois.

In the case of Smith v. Rekeweg, 3 Ill.App.2d 350, which is a decision of this Appellate Court, the court there said: "The expressed intention of the testator as ascertained from the language employed in the will must prevail." In that case, the language of the will as

172

to the matter in controversy, was as follows: "and to the children of Anna Morisy and to my great nephew, Roland Smith, I give, devise and bequeath the rest, residue and remainder, said Roland Smith, my great nephew and the children of Anna Morisy to share equally in the one seventh share." The dispute was as to whether the one-seventh share should be divided per capita or per stirpes. If per capita, then each child of Anna Morisy would receive an equal share with Roland Smith. If per stirpes, or as a class, then Roland Smith would be entitled to one-half of a one-seventh share, and the children of Anna Morisy to the other one-half of a one-seventh share. The court in that case in passing on the construction of the language of the will said: "As aptly stated by the Supreme Court in Barnhart v. Barnhart, 415 Ill. 303: 'In construing a will the question for determination . . . is not what the testator meant to say, but rather what he meant by what he did say.'" In that case, the language of the will said "to the children of Anna Morisy and to my great nephew Roland Smith, the children of Anna Morisy and Roland Smith to share equally in the one seventh share." That language, as interpreted by the court, showed the intention to class the children of Anna Morisy as one class and the great nephew as the other class. In other words, the division was per stirpes and not per capita. In that case, the children of Anna Morisy were the representatives of Anna Morisy, and Roland Smith represented himself.

 In applying the law as heretofore referred to in this opinion to the instant case, it must be apparent that the records of the scrivener were properly excluded. The next question that arises is whether or not the testimony of Andrew C. Schnack should be admitted. If there was any ambiguity, or a question of intention as disclosed by the language of the will itself, the courts of Illinois will permit such extrinsic evidence,

but if there is no ambiguity, any testimony that would tend to alter, detract, change or hinder the plainly expressed intent of the will itself, will not be admitted. We fail to find any ambiguity here. By the language of the clause in question, the testatrix said: "All principal and undistributed income, . . . shall be paid to and distributed among my nieces and nephews then living and the living children of any of my nephews and nieces who may at the time of the making of such distribution be dead, per stirpes and not per capita." This language is plain and unambiguous. There is no mention of the sisters or brothers, whether living or dead. It was plainly the intention as expressed in the will itself, that her estate should be divided among her nieces and nephews per stirpes. Per stirpes to the nieces and nephews, but not per stirpes as to the brothers and sister.

The contention of two of the heirs, Dorothy A. Rogers and Dr. James Rogers Wellman, if allowed, would be to apportion the estate per stirpes, not as nieces and nephews, as plainly stated in the will, but per stirpes to them as representatives of the brothers and sister of the testatrix. To allow the testimony of Andrew Schnack and of the scrivener, would be to completely change the language of the will and make it a distribution per stirpes to the children of the brothers and sister, instead of per stirpes to the children of the deceased nieces and nephews, as clearly expressed in the will itself. To do so would be to violate the rule that extrinsic evidence is inadmissible to vary, alter, detract or change the intent of the testatrix as stated in the will itself. The records of the scrivener and the testimony of the witness Andrew C. Schnack were both clearly inadmissible and the trial court properly ruled on those questions.

There must be a stopping point somewhere as to the admission of testimony. Unless there is a limit, the rule requiring written wills would be valueless. Then every

174

will would be subject to third parties coming in with testimony as to statements of the decedent, as to just what he or she meant to do, and the language of the will would not prevail. As our courts have said: "The expressed intention of the testator as ascertained from the language employed in the will must prevail." And as stated in the Smith v. Rekeweg case, 3 Ill.App.2d 350, quoting the language of Barnhart v. Barnhart, 415 Ill. 303, where it was said: "In construing a will the question for determination . . . is not what the testator meant to say, but rather what he meant by what he did say." Here it is clear that what the testatrix did say, was that her nieces and nephews or their descendants should share her estate, not per capita but per stirpes. In interpreting the language used, this court has no right to read into the language that her intention was per stirpes as to her brothers and sister, when the language of the will does not by any word or implication relate to the brothers or sister.

For the reasons given, the judgment of the circuit court is affirmed.

Affirmed.