(No. 32413.—

G. F. KROG, Admr., *vs.* ETHEL MAE HAFKA *et al.,* Appellants.—(META C. MUELLER *et al.,* Appellees.)

*Opinion filed November 20, 1952.*

KRUSEMARK & KRUSEMARK, of Joliet, (A. H. KRUSE-MARK, JR., and L. R. BERTANI, of counsel,) for appellants.

CHARLES M. ROBSON, and ROBERT E. HIGGINS, both of Joliet, for appellees Meta C. Mueller *et al.;* OSCAR R. LARAWAY, of Joliet, for appellee C. F. Krog, Admr.

Mr. JUSTICE BRISTOW delivered the opinion of the court:

This appeal comes from the circuit court of Will County wherein a decree was entered construing the last will and testament of Frieda Studtmann. G. F. Krog, administrator with the will annexed of her estate, filed the complaint herein requesting an interpretation of the will. All legatees and heirs were made parties defendant.

The will was a brief and simple one, the first paragraph directing the payment of debts and funeral expenses; the second contained a specific legacy to the Trinity Lutheran Church of New Lenox, Illinois; the third paragraph, the

one under scrutiny here, reads as follows: "Third: I hereby give, devise and bequeath to Harry E. Hafka and his wife Ethel May Hafka of New Lenox, Illinois all of my estate both real and personal of every kind and nature whatsoever to have and to hold the same, to them and to their heirs and assigns forever."; the last paragraph appointed Harry E. Hafka executor of the will.

The testatrix died on May 22, 1950, and Harry E. Hafka, one of the named beneficiaries in paragraph 3 of the will, died eight months previously. This fact gives rise to the present legal controversy. On the hearing in the circuit court, the plaintiff introduced in evidence only the record of the probate court. The defendants-appellants offered in evidence the testimony of four witnesses which would tend to demonstrate extrinsically the facts and circumstances surrounding the testatrix at the time of the execution of her will. The trial court ruled that the language of the will was plain and unambiguous and, therefore, the proffered extrinsic evidence was held inadmissible. The court also ruled that paragraph 3 should be construed to be a devise to Harry and Ethel Hafka, individually, rather than as a group or class, and consequently the devise to Harry Hafka lapsed and his share became intestate property which descended to the heirs-at-law of the testatrix.

Miss Studtmann left surviving her as heirs three cousins, namely, Meta C. Mueller and Walter H. Mueller of Aurora, Illinois, and Henry A. Keitel of St. Louis, Missouri, her family of five brothers and sisters having all predeceased her.

Frieda Studtmann, a spinster, spent the latter part of her life residing on her 170-acre farm, valued at $40,000.00 and located a mile south and two miles west of New Lenox. Approximately seven years prior to the death of the testatrix, Harry Hafka and his wife, Ethel Mae Hafka, moved out to the Studtmann farm. The dwelling house situated thereon was converted into two apartments, the Hafkas

residing in one, Miss Studtmann living in the other. Miss Studtmann, who was under the doctor's attention for four or five years with a goitre and heart ailment, was cared for in a kindly fashion by Mrs. Hafka, and Mr. Hafka tended the farm.

Appellees claim that paragraph 3 of the will under consideration presents no ambiguity and that the court was correct in refusing to consider extrinsic evidence in deciding the issues presented herein; that the devise to Harry and Ethel Hafka was to them individually and since Harry predeceased the testatrix, his devise lapsed and became intestate property and thus descended to the heirs-at-law of Frieda Studtmann. The appellants entertained in the court below two alternative theories, but the one asserted on this review is that the entire residuary estate as devised under the third paragraph of the will should survive to Ethel Mae Hafka.

The extrinsic evidence sought to be adduced on behalf of appellants consisted of the following which throws considerable light on the intention of the testatrix if considered. Frieda Studtmann did not care particularly for her cousins; their paths crossed infrequently, and she entertained resentment toward them which was caused when she one time drove to Aurora to see the cousins, but was not invited into their home. G. F. Krog, the assistant cashier of the bank at New Lenox, had been the family adviser of the Studtmann family for years; and after the death of her brother, the last of her family, in August, 1948, she discussed the making of a will with Krog and Mr. Laraway, a lawyer. She told them that she was not interested in leaving her estate to her relatives inasmuch as they had more money than she did, and, shortly thereafter, in August, 1948, she went to see Frank Kohlhagen of Frankfort, Illinois, a retired businessman, notary public, 80 years of age, and a lifelong acquaintance. She asked him to prepare a will, and he said that he would do so if

it was not too complicated. She replied that it was not too complicated as she wanted to leave everything to Mr. and Mrs. Hafka. On August 12, 1948, Miss Studtmann, with two neighbors to act as witnesses, returned to Kohlhagen's home where the will in question was prepared and duly executed. On that occasion she told Kohlhagen that she was living with the Hafkas; she liked them well; that it was her desire that everything should go to them; that they had agreed to take care of her until she died and to give her a decent burial. She also mentioned her relatives and stated that she did not owe them anything and "they are not going to get any of my estate." Miss Studtmann told Dr. W. H. Carr, her personal physician for years, that she was the last of the Studtmanns, and that she wanted everything she had to go to the Hafkas for they had taken good care of her. Later, she had a conversation with Dr. Carr after Mr. Hafka had died, wherein she said that she must change her will as she had meant to leave her property to Harry and Ethel.

Walter Mueller, one of the cousins, also testified. He stopped in to see Krog at the bank shortly before the death of the testatrix. He was told by Krog that his cousin had made a will leaving everything to the Hafkas, whereupon he went to see her about changing the will. He said that he was not interested in having any of the property but wanted to see to it that the church received a larger share. They talked for two and one-half hours, but they did not discuss the subject that prompted his visit. He did not explain his unusual interest in the Trinity Lutheran church at New Lenox, nor did he refute the testimony of the several witnesses that indicated the disaffection that existed between him and his cousin. Another witness, Harold Jacobs, a neighbor farmer, testified that Miss Studtmann told him that Harry and Ethel Hafka were the only ones that treated her right and the only ones that cared anything for her, and that she was going to see to it that all

of her property went to the Hafkas. Timely objections were made at the hearing to the competency of the foregoing testimony.

The two legal issues to be resolved on this appeal are: First, was the court in error in striking all the foregoing extrinsic evidence? Second, did it err in interpreting the will of Frieda Studtmann so that Ethel Mae Hafka took only an undivided one-half of the residuary estate? These two questions are so interrelated that they may be considered as one.

The cardinal rule of construction of wills is to ascertain the true intent of a testator. This intention is to be gathered from the words of the will itself, considering the entire will as a whole. However, courts in construing wills have not always limited themselves to the words expressed in the instrument. Where there is an ambiguity, a court is obliged to place itself as nearly as possible in the position of the testatrix to truly ascertain the intent of the testatrix. The will being studied is a simple one; it presents no ambiguous language; and were it not for the death of Harry Hafka, it could not be seriously contended that an ambiguity developed.

If the death of Harry Hafka raises a latent ambiguity, there seems to be no question under the authorities in this State that extrinsic evidence is appropriate to explain, interpret or construe such latent ambiguity. What is a latent ambiguity? Black's Law Dictionary, Third Edition, says: "* * * a latent ambiguity is one where the language employed is clear and intelligible and suggests but a single meaning, but some extrinsic fact or extraneous evidence creates a necessity for interpretation or a choice among two or more possible meanings." *Higinbotham* v. *Blair,* 308 Ill. 568.

In one of the earlier cases frequently cited on this subject, *Decker* v. *Decker,* 121 Ill. 341, at page 350, the court said: "While the general rule undoubtedly is, that the in-

tention of the testator is to be gathered from an inspection and consideration of the will, and from no other source, in case of latent ambiguity courts do and must listen to extrinsic evidence,—not for the purpose of contradicting or adding to the terms of the will, nor to wrest the words of the testator from their natural operation, but for the purpose of determining the existence or nonexistence of latent ambiguity, (for a latent ambiguity can only be shown by extrinsic evidence,) and for the further purpose of enabling the court to look upon the will in the light of the facts and circumstances surrounding the testator at the time the will was made, whereby to determine the intention of the testator." (*Felkel* v. *O'Brien,* 231 Ill. 329; *Koelmel* v. *Kaelin,* 374 Ill. 204, 29 N.E. 2d 106; *Norton* v. *Jordan,* 360 Ill. 419.

This court in the case of *Hedlund* v. *Miner,* 395 Ill. 217, 69 N.E. 2d 862, evidenced a degree of liberality in the reception of extrinsic evidence in order that it would be in a better position to construe the will under consideration. The testator therein had left his entire estate to his wife, and at the time had no children but was shortly expecting one. The will was executed on October 11, 1941, and the child was born on November 3, 1941. Section 48 of the Probate Act provides that a will making no provision for an after-born child is not effective in regard to such child unless it appears by the will that it was the intention of the testator to disinherit the child. The court considered extrinsic evidence to clarify the plain and unambiguous language of a will made ambiguous by operation of section 48 of the Probate Act. Such evidence indicated that the testator and his wife were happily married and were joyously anticipating the arrival of the child. The will when construed in light of those circumstances evidenced no intention on the part of the testator to disinherit his child born subsequent to his death. Concerning their reliance upon facts not contained in the instrument,

the court said: "but the same may be drawn from the language of the will when construed in connection with the proved facts and circumstances surrounding the testator when the will was made, evidence of which may be received, not for the purpose of changing the language of the will, but to explain its meaning where there is an ambiguity in the will with reference to disinheriting after-born children."

In the case of *Dahmer* v. *Wensler,* 350 Ill. 23, the testator in the sixth clause of the will created a residuary clause as follows: "to the children of John Dahmer and Charles Wensler and Henry Wensler in equal parts." Extrinsic evidence was adduced to show that Henry Wensler had no children at the time the will was executed and that he was at that time sixty-two years of age. Evidence was admitted showing the friendly relations between the testator and Henry, indicating the improbability that the testator intended to disinherit him. The question was presented as to whether Henry Wensler was to be omitted entirely from this will since there were no children of his in existence at the time of the death of the testator, or whether the will could be construed so as to give Henry Wensler personally a one-third interest in the estate. The court said, at page 30: "While parol evidence is not admissible to show what a testator intended to write, it may be admitted where its effect is merely to explain or to make certain what he has written. In ascertaining the testator's intention the words of the will are to be read in the light of the circumstances under which the will was made, and to that end the court may put itself in the place of the testator for the purpose of determining the objects of the testator's bounty or the property which is the subject of disposition. [Citations] It is proper, in such an inquiry, to take into consideration all the circumstances under which the will was executed, including the nature, extent and condition of the testator's property as well as his relations

to his family and to the beneficiaries named in the will." In that case, the court, giving consideration to the extrinsic evidence, held that Henry Wensler was personally entitled to one third of the residuary estate. Other cases which might be helpfully considered in connection with this inquiry are *In re Estate of Reeve,* 393 Ill. 272, 65 N.E. 2d 815, *Papa v. Papa,* 377 Ill. 316, 36 N.E. 2d 717, *Knisely v. Simpson,* 397 Ill. 605, 74 N.E. 2d 695, and *Stern v. Stern,* 410 Ill. 377, 102 N.E. 2d 104.

This brings us to a consideration of the next contention made by the appellants in this court that the provisions of paragraph 3 of the will under consideration created a class devise. Appellants and appellees in their briefs seem to be in agreement as to the definition of a class gift and the essentials it must contain in order that it be so construed. Page on Wills, chap. 25, sec. 1046, defines a class gift as follows: "A gift to a class is a gift of an aggregate sum to a body of persons, uncertain in number at the time of the gift, to be ascertained at a future time, and who are all to take in equal or in some other definite proportions, the share of each being dependent for its amount upon the ultimate number." And the same author in section 1049, vol. 3, on page 204: "If the gift is made to beneficiaries by name, the gift, prima facie, is not one to a class even if the individuals who are named possess the same quality or characteristic in common. Where there is a gift to a number of persons who are indicated by name, and who are also further described by reference to the class to which they belong, the gift is held prima facie to be a distributive gift and not a gift to a class."

The appellees herein contend that, inasmuch as the paragraph under consideration designates Harry Hafka and Ethel Mae Hafka by name, there is no class gift and the parties will take distributively and not as a class. Notwithstanding the fact that the beneficiaries in section 3 were named, it is the contention of the appellants herein

that under the facts and circumstances appearing in this record the presumption that there was therein created a gift to individuals is overcome. To resolve this conflict in views, let us consider the law on this subject, about which there is little disagreement.

In Am. Jur. vol. 57, page 831, is found the following: "The decisive inquiry is whether or not the testator, in making the particular gift in question, did so with group-mindedness, whether in other words, he was looking to the body of persons in question as a whole or unit rather than to the individual members of the group as individuals; if the former, they take as a class." In Corpus Juris, vol. 69, page 232, are found these words: "Primarily, the determination of the question depends on the language of the will, but it is not absolutely controlled or limited thereby; the substance and intent, rather than the words, are to control; as aids thereto, the general scope of the will, the general purpose of the testator, the particular language used, the relationship of the parties, and the surrounding circumstances may all be considered, subject always to the limitation, prevailing generally as to the availability of extrinsic facts and circumstances as aids to construction, that such matters cannot be resorted to in order to defeat the plain and unambiguous language of the will." (75 A.L.R. 780, and 105 A.L.R. 1395.) The general scheme of the will is frequently brought into consideration in determining the existence of a class gift. (75 A.L.R. 811.) The fact that there is a natural class among the beneficiaries is ofttimes held to be indicative of a class gift. Other factors proper to be considered in ascertaining the intent of the testator in making the determination of the existence of a class gift are found in this language in 57 Am. Jur. page 837, "Among the extrinsic matters proper to be taken into consideration in determining whether a testamentary gift is one to a class or to individuals may be cited the relation of the testator to the objects of his

bounty; whether or not the beneficiaries constitute what may be termed a natural class; the subject matter of the gift; the skill of the draftsman who drew the will; the circumstance that a construction of the gift as one to individuals will produce a partial intestacy; the circumstance that the testator, although knowing of the death of a beneficiary, failed to make any change in the will with respect to the gift as one to individuals will result in favoring strangers to the testator's blood." In Carey and Schuyler, Illinois Law of Future Interests, page 228, the authors said: "It is difficult to be more definite than to say that a gift is a class gift if, from the entire will and the circumstances surrounding its making, one may conclude that the testator intended to treat the takers of the gift as a group and not as individuals—that his interest in them was a collective interest."

The leading case in Illinois in giving recognition to the foregoing principles of law is *Strauss v. Strauss,* 363 Ill. 442, 2 N.E. 2d 699. In that case the beneficiaries were specifically named in the residuary clause. E. J. Strauss, one of the named beneficiaries, predeceased the testator without children, and the question arose as to whether his interest under the residuary clause passed to the remaining brothers and sisters named therein as a class, or whether it lapsed and became intestate property. The court in passing upon this question, which is identical with ours, had the following to say: "But far and beyond all other rules in cardinal importance, and, in fact, the chief reason for their existence, is the one fundamental rule of construction that the chief object and purpose of a court in construing a will is to ascertain and give effect to the true intention of the testator. * * * In accordance with well-settled rules, this residuary clause cannot be construed standing alone but must be read and understood in connection with other parts of the will and codicils, and with the facts and circumstances surrounding the making of the

will, in order to arrive at the true intent of the testator."
At page 451, this court in that case, in giving considera-
tion to the general rule that a gift to named persons is a
gift to them individually, found that the *prima facie* con-
struction was overcome by the intent of the testator, and
in this connection had the following to say: "No technical
rules of construction can be invoked to defeat a well-
expressed testamentary plan of this character. When the
will is considered as a whole, as it must be, the general
treatment by the testator of his remaining seven children
as a class is such as will prevent partial intestacy and the
consequent operation of the statutes of descent. While we
recognize the general rule that a gift to persons named is
a gift to them individually and not as a class, yet reasons
are here found in the language and structure of the will
for deciding that the intent of the testator, which is, of
course, paramount to the rule, would be best subserved by
disregarding it. * * * 'The mere fact that he mentions
by name the individuals who make up the class is not con-
clusive, and if the intention to give a right of survivorship
is collected from the remaining provisions, applied to the
existing facts, such intention must prevail.' The inference
which would otherwise be drawn by naming the children
must in this case yield to the clearly expressed intent of
the testator." This same rule has been recognized in later
decisions. (*Peadro* v. *Peadro,* 400 Ill. 482, 81 N.E. 2d
192; *Strohm* v. *McMullen,* 404 Ill. 453, 89 N.E. 2d 383.)
In the *Peadro case,* at page 489, this court said: "This
court recognizes the rule that a gift to persons named is
a gift to them individually and not as a class, and will
treat the gift as one to individuals, unless reasons are
found in the language and structure of the will for decid-
ing that the intent of the testator, which is, of course,
paramount to the rule, would be best subserved by dis-
regarding the rule and treating the gift as one to a class."
In *Strohm* v. *McMullen,* Justice Gunn, at page 457, said:

"The mere fact that the testator mentions by name the individuals who make up the class is not conclusive, and if the intention to give a right of *survivorship* is collected from the remaining provisions of the will, as applied to the existing facts, such an intention must prevail." To like effect is the case of *Lincoln National Life Insurance Co. v. Trost,* 292 Ill. App. 338.

The case of *In re Stebbins Estate,* 210 N.Y. Supp. 424, is strikingly similar to the one before us. The will therein provided that the residue of the property be given and bequeathed to La Grange S. Shepard and Sophronia A. Shepard, his wife, upon condition, however, and with the understanding and expectation that they will care and provide for her wants in sickness and in health so long as she remained alive and for a respectable burial. The husband named in that paragraph predeceased the testator by eight months, and the testator left no close relatives excepting cousins. At page 426 the court said: "It is urged that this was gift to a class. For that reason, Mrs. Shepard, the survivor, should take the entire residue. It is a fundamental principle that in construing a will the testator's intention must govern, if such intention is not inconsistent with rules of law, statutory or otherwise." It was pointed out by the court therein that the intention of the testator was to be gathered from the words of the will together with the facts and circumstances attending the execution of the will, the relation of the parties, the nature of the property, and the apparent purpose of the will. The court observed that the testator had for a number of years lived with the Shepards, was treated as a member of their family, ate with them, and was cared for by them. He had no other home, and he did not call on any of his relatives, nor did they visit him. The draftsman of the will stated that the testator told him at the time of the execution that he thought Mr. and Mrs. Shepard had earned and deserved his property and he desired them to have what

was left. The court said, at page 427: "It is apparent from the language of the will and from the evidence submitted that the testator did not intend to leave any part of his estate undisposed of and that he did not intend to give any portion of his estate to collateral relatives excepting those mentioned in the second paragraph of the will. There is a legal presumption that the testator did not intend to leave any of his estate undisposed of, and having died more than eight months after LaGrange Shepard and having made no further disposition of his property during that time, it is apparent that he supposed and intended that Mrs. Shepard would take all of the residue of his estate. On the whole it seems clear that the testator intended that the beneficiaries named in the third paragraph of said will should take the property jointly as a class and not as individuals. I think, therefore, that Sophronia A. Shepard is entitled to the entire residue of the estate."

Our attention has been called to several other cases where the factual situations and the pronouncements of law are identical with the *Stebbins case*. (*Walker* v. *First Trust and Savings Bank,* U. S. Circuit Court of Appeals of the Eighth Circuit, 12 Fed. 2d 896, 75 A.L.R. 757; *Shannon* v. *Riley,* 153 Miss 815, 121 S. 808; 75 A.L.R. 768.) As hereinbefore noted, the courts of many jurisdictions and authors on the subject have recognized many factors and circumstances as a legitimate guide in determining the intention of a testator,—whether he intended a devise to be to a group as such or to the named beneficiaries as individuals. The record in this case presents an array of all the controlling and important factors that make the conclusion inescapable that Frieda Studtmann intended that all her property was to go to the Hafkas as a class. Let us review those circumstances: (1) The draftsman of the will was unskilled. (2) The testatrix did not change her will even though one of the named beneficiaries predeceased her. (3) The persons named as beneficiaries

were a natural class—they had given the testatrix aid, comfort, attention and companionship during the last seven years of her life when she was lonely and unwell. (4) The circumstance that partial intestacy will follow if appellees' contention is sustained. (5) The general scheme of the will —with particular emphasis on the fact that the testatrix failed to mention the name of any heir in her will, thus compelling the inference that she did not want any of her relatives to share in her property and that she did not want any legacy to lapse and pass under the laws of descent. (6) The interest of the testatrix in the beneficiaries was a collective interest. (7) If paragraph 3 is construed as a gift to Harry Hafka individually, one half of the property will go to her cousins, the very thing the testatrix told her doctor, banker, lawyer and neighbor that she did not want to happen. (8) If paragraph 3 is not construed as a class devise, then Harry and Ethel Hafka will not receive the residue of her property, which would be inconsistent with her wishes as she had expressed them to her lawyer, banker, neighbor and doctor.

We conclude therefore that it is proper for us to interpret the instant will in the light of the facts and circumstances that surrounded its execution, and in doing so it clearly appears that it was Frieda Studtmann's intention that the residue of her property passing under the third paragraph go to Ethel Hafka, the surviving member of a class, and the failure of the trial court to so decree was error.

The basic question on the appeal as to whether the devise to the Hafkas was to them as individuals or as a class was only lightly touched upon in appellees' brief. We find nothing in the authorities cited therein that announces any principles of law inconsistent with those that we have considered in reaching the conclusion heretofore indicated. A large portion of appellees' brief is devoted to the rule in *Shelley's case*. We fail to recognize the validity of the

argument submitted on that subject. The rule in *Shelley's case* applies where there is a devise or grant to one for life with remainder to his heirs. Here we do not find a devise of a life interest with a remainder. It was an outright devise to Harry E. Hafka and his wife, Ethel Mae Hafka, and to their heirs and assigns forever.

In light of the foregoing analysis, it is our opinion that the decree entered in this cause by the circuit court of Will County should be and is reversed, and this cause is remanded to that court, with directions to enter a decree in conformity with the determinations expressed herein.

*Reversed and remanded, with directions.*