ELDON HARMS, Plaintiff, *v.* ROBERT HARMS *et al.*, Defendants-Appellees—(Esther Flessner *et al.*, Defendants-Appellants; Adrian Harms *et al.*, Defendants).—ELDON HARMS, Plaintiff, *v.* ROBERT HARMS *et al.*, Defendants-Appellees—(Esther Flessner *et al.*, Defendants; Adrian Harms *et al.*, Defendants-Appellants).—ELDON HARMS, Plaintiff-Appellant, *v.* ROBERT HARMS *et al.*, Defendants-Appellees—(Esther Flessner *et al.*, Defendants).

Fourth District   Nos. 17685, 4—82—0064, 4—82—0065 cons.

Opinion filed September 13, 1982.

John A. Carlon, of Normal, for appellants Adrian Harms and Thora Mercer.

John C. Hirschfeld, of Meyer, Capel, Hirschfeld, Muncy, Jahn & Aldeen, of Champaign, for appellants Esther Flessner *et al.*

Gale W. Saint, of Bane, Allison & Saint, P. C., of Bloomington (Douglas W. Worrell, of counsel), for appellant Eldon Harms.

James Yoder, of Yoder, Yoder, Zanoni, Flynn, Prall & Willard, of Bloomington, for appellees.

PRESIDING JUSTICE GREEN delivered the opinion of the court:

On March 18, 1980, plaintiff, Eldon Harms, filed suit in the circuit court of Woodford County seeking construction of the will and codicil of Folkert J. Harms, deceased, as they concerned the rights of tenancy on a farm tract of approximately 120 acres in that county and related questions concerning limitations upon the sale of the property. Numerous persons were joined as defendants. Some answered and counterclaimed, others merely answered, and some were defaulted. After completion of an evidentiary hearing, the court entered an order on November 21, 1981, determining defendants-counterclaimants, Robert Harms and Alfred Harms, to be entitled to be tenants of the tract, and the property not to be then subject to being sold without their consent. Defendants, Esther Flessner, David Bruns, Paul Bruns, James Bruns, Margaret Van Hoveln, E. O. DeWeerth, Raymond DeWeerth, E. Allen DeWeerth, Phyllis Holtfreter, Adrian Harms and Thora Mercer, and plaintiff have appealed. We affirm.

The testator died on March 5, 1966, survived by his wife, Tenna Harms, who lived until December 22, 1979. The testator devised to her a life estate in all his realty, terminable if she remarried. Clause Fourth of the will provided that, upon termination of the life estate, persons "hereafter named" shall sell all the real estate "within two years." The clause further stated:

"During the period which may elapse from the time of my wife's death or remarriage until the time of sale my said personal representative shall have the power and authority to rent and collect the rents from said real estate but not for a period of more than two years."

On May 6, 1965, 10 months before his death, the testator executed a codicil, the pertinent portions of which stated:

"I provide that the provisions in the Fourth Clause relative to the two year period for the sale of my real estate, which is farm land and leased to tenants, be deleted and eliminated and in lieu thereof I provide that said real estate shall be sold as provided in and by said clause ten (10) years from the date of the death of my wife, or upon her remarriage, and if she shall have preceded me in death, then ten (10) years after my death. My purpose in making this provision is to give the tenants on said real estate the right to remain on and in the possession of said farm land as I realize that it is sometimes difficult for a tenant to move and secure another farm.

In the event that the tenant on any of the land does not wish to avail himself of the ten (10) years period as above provided, then he can waive the same and my Executors can then sell the said real estate as soon after the death of myself and my wife as they in their judgment shall deem proper.

I also provide that in the ten (10) year period as above provided, that if any such tenant shall die, or does not wish to avail himself further of the right to remain as a tenant on the farm land, then he can waive the further right of possession and my said Executors can then proceed with the sale of said real estate."

Plaintiff, Eldon J. Harms, was the tenant on the 120-acre tract in question at the time of the execution of the codicil and at the time of the testator's death. During the existence of the life estate of Tenna Harms, she terminated plaintiff's tenancy and leased the tract to defendants, Robert Harms and Alfred Harms. Plaintiff maintained that under the provisions of the codicil, he had a right to remain as tenant. However, in a suit entitled Tenna Harms v. Eldon J. Harms, Docket No. 69—L—104, the circuit court of Woodford County ruled on May 12, 1979, that under the terms of the will and codicil, Tenna Harms had authority during the existence of her life estate to rent the tract to whom she pleased. No appeal was ever taken from that order.

Throughout the litigation, plaintiff maintained that a patent ambi-

guity existed in the codicil. He further maintained that when properly construed, the codicil provided that only he was entitled to be the tenant during the 10-year period following the death of Tenna Harms or, in the alternative, no one was entitled to be the tenant and, accordingly, the property was subject to immediate sale. The defendants, other than Robert and Alfred Harms, contend that the 10-year period was intended to be operative only if plaintiff was tenant at the termination of the life estate and because he was not, the provision does not come into effect, and the property is subject to immediate sale. Defendants Robert and Alfred Harms assert the trial court properly ruled that by virtue of being the tenant of the tract when the life estate terminated, they are entitled to be tenants for 10 years, and they have the power to determine whether a prior sale may be made.

The plaintiff and defendants-appellants contend that the statement in the codicil that "[m]y purpose in this provision is to give the tenants on said real estate ***" is patently ambiguous as to whether the "tenants" referred to were those holding that position at the execution of the codicil, at the testator's death, or at the life tenant's death. To show the ambiguity and to support the contention that the testator did not intend to benefit the plaintiff, appellants rely upon the testimony of attorney James A. Riely of Minonk. He stated that after discussion between the testator, the witness and attorney Edward F. Riely, the latter dictated the codicil in the presence of the other two. On cross-examination by attorney John C. Hirschfeld on behalf of defendants-appellants, the witness stated that in the discussion the testator mentioned plaintiff Eldon Harms, defendant Alfred Harms, and a Mr. Kalkwarf who were then the existing tenants on the three farms of the testator. The following colloquy then took place:

"MR. HIRSCHFELD: I will ask you the question. Did he specifically state to you that he wanted to benefit these three tenants?
A. He did.
Q. And you're sure of that?
A. I am positive."

Evidence also showed plaintiff had been leasing the 120-acre tract since 1962, and a close relationship existed between plaintiff and testator for even longer because plaintiff, as a boy and young man, worked in the testator's corn shelling and threshing business.

The trial court determined that the testimony of James A. Riely should be treated as that of a scrivener who could explain the intent of the language used. The court then ruled that an ambiguity existed

in the codicil, thus making extrinsic evidence admissible to explain the document. The court found the testator expected Eldon Harms to be the tenant at the time of the termination of the life estate, but that he also intended to place reliance "upon the ability of Tenna Harms to make and carry out any decisions relating" to the property subject to her life tenancy. Accordingly, the trial court found that the testator (1) recognized that his widow might find it necessary to change the tenancy, and (2) intended the new tenants to also have the protection of a protracted tenancy beyond the expiration of the widow's life estate.

We need not pass upon defendants Robert and Alfred Harms' theory that no latent ambiguity existed in the will because we hold that even if such ambiguity did exist, the trial court's determination was not erroneous.

■ The intent of the testator as stated in the codicil was to protect tenants from the difficulties of being required to move and obtain new land to farm. A binding determination was previously made that the tenants on the land at the time of the testator's death were not intended to have the right to remain during the life estate. A former tenant, not farming the land at the termination of the life estate, would not have to move upon the termination of that estate. The determination of the trial court here that such an individual was not intended to be reinstated as a tenant was logical and not contrary to the manifest weight of the evidence. The trial court did not err in ruling plaintiff had no right to be tenant.

A stronger argument is that of the defendants-appellants which is also the alternate argument of plaintiff. Their theory is that the testator intended the 10-year provision of the codicil to benefit only the three tenants farming the three tracts at the time of the execution of the codicil and, accordingly, the 10-year provision is not applicable to any tract where that tenant was not the tenant at the conclusion of the life estate. Defendants-appellants liken the benefits of the 10-year provision to devised to the three tenants of a base fee vesting at the time of the testator's death but subject to an executory devise which would take effect as to a particular tract if the intended tenant was not lessee of that tract at the termination of the life estate. See *Carr v. Hermann* (1959), 16 Ill. 2d 624, 158 N.E.2d 770.

The 10-year provision in aid of tenants was most unusual. A strong argument can be made that the testator would not want it to benefit unascertained persons who might be tenants sometime in the future but would want its application limited to persons he knew such as the three named tenants. However, the witness Riely did not testify the testator said he intended to benefit only the three tenants. As

the trial court noted, a landowner of testator's background would likely recognize that one or more of the tenants might not be farming the land at the end of the widow's life estate and would refer specifically to that circumstance had he not wanted the 10-year provision to apply then. Because of the conflicting conclusions that might be reached from the evidence, the trial court's conclusion that the testator intended for the 10-year provision to benefit any tenant farming the land at the termination of the life estate was not contrary to the manifest weight of the evidence.

■ In explaining its order in open court, the trial court indicated it had uncertainty about the correctness of the testimony of the witness Riely because it seemed to be contrary to the specific language of the instrument. The court noted the rule that when an instrument is drafted by lawyers the specific language should control. Plaintiff contends this was improper. Although, as stated in *Krog v. Hafka* (1952), 413 Ill. 290, 109 N.E.2d 213, when construing an ambiguous provision of a will, the court should put itself in the position of the testator. We are aware of nothing which prevents the court from considering that a lawyer would be likely to mean what he states.

We also disagree with plaintiff's theory that because the life tenant could, by leasing to a particular tenant, control the person who would benefit from the 10-year provision as to a particular tract, the life tenant was given a power of appointment. Plaintiff asserts the consideration given by the court violates the rule that a power of appointment cannot be created in a life tenant unless expressly stated in the testimentary instrument. (*First United Presbyterian Church v. Christenson* (1976), 64 Ill. 2d 491, 356 N.E.2d 532.) By virtue of a binding prior order, the life tenant clearly had the power to enter into a lease with a new tenant. We do not understand the above rule to negate the effect of all indirect consequences of that act of the life tenant unless the will and codicil expressly gave the life tenant the power to bring about those consequences.

The order appealed is affirmed.

Affirmed.

LONDRIGAN and TRAPP, JJ., concur.