*In re* ESTATE OF EDWARD C. CANCIK, Deceased—(Thomas S. Chuhak, guardian *ad litem* for Unknown Paternal and Maternal Heirs of Decedent, Petitioner-Appellee, *v.* First National Bank of Cicero, Ex'r of the Estate of Edward C. Cancik, *et al.*, Respondents-Appellants).

First District (5th Division)   No. 83—541

Opinion filed January 13, 1984.

Allen S. Greene, of Wheaton, for appellants.

Thomas S. Chuhak, guardian *ad litem*, of Chicago, *pro se* (William J. O'Connor, of counsel), for appellee.

JUSTICE SULLIVAN delivered the opinion of the court:

Thomas Chuhak (Chuhak) filed a petition to construe a will and Charles Cancik (Charles) appeals from the order of the trial court denying his claim that he is the residuary legatee of decedent's estate. The sole issue on appeal is the propriety of that order.

During his lifetime, Edward Cancik (testator) entered into a contract with the Woodlawn Cemetery Association (Woodlawn) whereby he paid $4,150 to the Woodlawn Trust Fund for an endowment policy for the care and maintenance of the Cancik Family Mausoleum (mausoleum). Thereafter, in September 1978, he executed a will in which he bequeathed, in clause IV, all of his personal and household effects to Charles; and then, in clause V, placed the residue of his estate into a testamentary trust, the income of which was to be used for the perpetual maintenance of the mausoleum. The First National Bank of Cicero was named executor of the will and trustee of the residuary funds. In the final clause of the will (clause VII), testator stated:

> "I have intentionally omitted the names of any of my relatives from this my Last Will and Testament for reasons I deem good and sufficient with the exception of my aforesaid cousin, CHARLES E. CANCIK."

Testator died on January 18, 1982, leaving a net estate valued at more than $200,000. His will was admitted to probate on March 5, 1982, and in May of that year Charles filed a complaint alleging that the value of the trust corpus vastly exceeded the amount necessary to accomplish its purpose and asked that the surplus be held upon a re-

sulting trust for testator's estate and distributed to him as testator's only heir at law. Thereafter, Chuhak, acting guardian *ad litem* for any unknown heirs, filed a petition to construe the will, asserting that the purpose of the trust had been accomplished by the endowment policy purchased by testator from Woodlawn; that if not set aside, the trust would generate an unlawful accumulation of income; and that the excess funds should be declared a resulting trust in favor of testator's heirs, 12 of whom were later found to be living in Czechoslovakia. Charles then amended his complaint, requesting that the residuum of the estate be distributed to him in accordance with the intention of the testator. In the meantime, Woodlawn agreed to provide the perpetual care described in the terms of the testamentary trust upon receipt of an additional payment of $10,850.

Both parties submitted memoranda of law, and after consideration thereof, the trial court found that the residuary bequest was against public policy and invalid because of the inexhaustible residuum that would result from the investment of the trust funds; that it was, in effect, a lapsed legacy which passed as intestate property; and that clause VII of the will did not effectively disinherit testator's other heirs or constitute an alternate residual bequest to Charles. The court then denied Charles' claim to the residuum and ordered that it be distributed to testator's heirs at law as provided in the statute of descent and distribution. Ill. Rev. Stat. 1981, ch. 110½, par. 2—1.

OPINION

Charles contends that the trial court erred in finding that the undisposed residuary estate is intestate property which must pass to testator's heirs. He reasons that (a) since the purpose of the trust has been accomplished without depleting its assets, the surplus should be held upon a resulting trust for the estate of the testator; (b) the property must then pass under the will in accordance with the intention expressed therein; and (c) an alternate gift, by implication, of the residuary estate was made to him by the language of clause VII, wherein testator expressed his intention to disinherit all other heirs.

Initially, we note that a resulting trust, characterized as an "intent enforcing trust," is created by operation of law (*In re Estate of Wilson* (1980), 81 Ill. 2d 349, 410 N.E.2d 23; see Restatement (Second) of Trusts, ch. 12 (1957)) upon the failure of an express trust (*Zimmerman v. Schuster* (1957), 14 Ill. App. 2d 535, 145 N.E.2d 94) or where the trust purpose has been fully accomplished without exhausting the trust assets. In such situations, the beneficial interest results to the settlor or his estate (see Restatement (Second) of Trusts

sec. 430 (1957)), and it then becomes necessary to determine whether he provided for its disposition in his will.

■ The object of testamentary construction is to ascertain the intention of the testator and, in so doing, the intention which must be given effect is that expressed in the language of the will, not one which the testator may have had in his mind but failed to express. (*Bond v. Moore* (1908), 236 Ill. 576, 86 N.E. 386.) Although there is a presumption against intestacy, it is only a presumption and may not be used to overcome the language of the will or to supply language which has been omitted. Thus, where the testator has overlooked a contingency for which he probably would have provided had it occurred to him, the court may not speculate as to what that provision might have been (*Kenney v. Pasieka* (1970), 125 Ill. App. 2d 24, 260 N.E.2d 766); rather, any property not specifically devised or bequeathed will pass under the residuary clause, but where there is no residuary provision or that clause itself has failed for some reason, the undisposed portion of the estate becomes intestate property and vests in the heirs of the testator according to their proportionate statutory shares (*Griffin v. Griffin* (1963), 29 Ill. 2d 354, 194 N.E.2d 641; *Glaser v. Chicago Title & Trust Co.* (1946), 393 Ill. 447, 66 N.E.2d 410).

■ Here, Charles concedes that the will contained no specific dispository provision for the unused trust funds; nevertheless, he maintains that clause VII effectively disinherits all other heirs and thus creates, by implication, an alternate residuary bequest to him as the only heir who was not excluded from participating in the distribution of the estate. We find this argument unpersuasive. First, it is well settled that heirs cannot be disinherited merely by a declaration that they are excluded from the will or that they take only a certain amount. (*Tea v. Millen* (1913), 257 Ill. 624, 101 N.E. 209.) The only means by which a testator can disinherit an heir is to give the property to someone else (*First Trust & Savings Bank v. Olson* (1933), 353 Ill. 206, 187 N.E. 282); thus, no matter how strong the intention to disinherit may be expressed in a will, the testator is presumed to know the law that where a testamentary gift fails, for whatever reason, and no alternate dispositional intention is expressed, the property passes by intestacy to the heirs at law (*Strohm v. McMullen* (1949), 404 Ill. 453, 89 N.E.2d 383). Furthermore, while gifts by implication have long been recognized in Illinois, our supreme court has repeatedly held:

> " '[They] can only be given effect in cases of such clear necessity that from the will itself no reasonable doubt of the inten-

tion can exist. Probabilities as to the testator's intention cannot be weighed, but the implication must be so strong that an intention contrary to that imputed to the testator cannot be supposed to have existed in his mind. [Citations.] It must be such as to leave no hesitation in the mind of the court and permit no other reasonable inference. [Citation.] ***' '' *Bradshaw v. Lewis* (1973), 54 Ill. 2d 304, 308, 296 N.E.2d 747, 749; see also *Bond v. Moore* (1908), 236 Ill. 576, 580, 86 N.E. 386, 387.

■ In our view, a reading of the will in its entirety, and of the language of clause VII in particular, does not give rise to an implication so strong as to leave no reasonable doubt that the testator intended Charles to inherit the entire excess residuum of his estate. It appears that his major concern was for the care and maintenance of the family mausoleum, and it was to this purpose that he directed, through clause V, the overwhelming bulk of his assets; and although he referred to Charles with a certain degree of affection, as his "beloved cousin," the bequest to Charles in clause IV of the will consisted of only personal property of minimal value when compared to the total estate. In the light of this vastly disproportionate division of property between the trust and Charles, we cannot conclude, as Charles suggests, that he (Charles) was so favored by the overall scheme of the will as to raise an inference that clause VII evidenced testator's intention to disinherit all other heirs; or, more importantly, that it created an alternate residuary bequest to him upon the termination or failure of the trust. As noted earlier, where a will is silent or where its provisions lend themselves to more than one interpretation, the courts may not supply gifts not found therein, and the property left undisposed then passes by intestacy to the heirs of the testator notwithstanding any attempts in the will to disinherit them.

We therefore reject Charles' argument that the trial court improperly "transmuted" the trust funds from testate to intestate property. While we agree that the trust was not invalid from its inception and was, in fact, intended to pass as testate property, whether it is characterized as a "lapsed legacy" or a "resulting trust" is immaterial to the issue before us because, in either case, where no testamentary provision was made for its disposition, the property must pass to the heirs by the laws of intestacy.

For the foregoing reasons, the order of the trial court is affirmed.

Affirmed.

MEJDA, P.J., and WILSON, J., concur.